JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Robert Lee appeals from his conviction for domestic violence. For the reasons set forth below, we affirm.
 {¶ 2} On September 16, 2002, defendant was indicted for one count of domestic violence with a furthermore clause which alleged that defendant had previously been convicted of domestic violence, one count of felonious assault, and one count of retaliation. He pled not guilty and the matter proceed to a bench trial on December 16, 2002.
 {¶ 3} The complainant, "Beth," testified that she had been defendant's girlfriend for five years. Defendant had been living with his employer and was forbidden from drinking there, and she lived in her car. On weekends, she and defendant stayed at the King's Inn in Strongsville so that they could be together and drink. On July 20, 2002, she and defendant drank and went to the pool. Later, they watched television and, according to Beth, defendant began to blame her for reporting a previous domestic violence incident for which defendant had been incarcerated. He threw her on the bed, and using both hands, slammed the sides of her head, above her ears. He then straddled her and pressed his hands over her nose and mouth and repeatedly asked her if she wanted to die. The woman testified that she could not breathe, started to see a white haze and felt as though she felt as if she was about to pass out.
 {¶ 4} The woman stated that she was afraid to report the matter after it happened. The defendant apologized to her approximately a half hour later and begged her not to go to the police.
 {¶ 5} The woman testified that she suffered headaches, ringing in her ears and impaired vision following the incident. A week later, she went to Southwest General Hospital for treatment and reported the matter. She was subsequently referred to an alcoholism treatment center. At the time of trial, the woman resided in an inpatient alcohol treatment facility and was also getting counseling through the Cuyahoga County Department of Children and Family Services.
 {¶ 6} The woman admitted that sometime between July 20, 2002, and the time when she sought treatment at Southwest General, she had been involved in a motor vehicle accident in which her vehicle struck the guardrail on the interstate. She denied getting hurt at that time, however. She also acknowledged that she went to the defendant's place of employment after the accident to show him the damage then refused to leave, prompting defendant's employer to file a police report.
 {¶ 7} The woman next established that after he was jailed in connection with this matter, defendant wrote her a number of times. In pertinent part, defendant wrote:
 {¶ 8} "When I do write [to my attorney] and my judge, I'm going with the hit your nose/steering wheel-accident. The excessive drinking, pill taking, depression, living out of car and co-dependency, makes you live in fear and anxiety. You can use that. Both times you called police, Cleveland and Strongsville, you were afraid I was leaving you. * * * Stick to this. * * * Dude here told me [that if] it gets to trial, ladies from women's shelter are going to pester you. That's why I suggested the perjury route * * * Just ideas honey."
 {¶ 9} On cross-examination, the woman admitted that she had written a number of letters to the defendant in which she mentions issues of perjury and lying. She also admitted that she had been drinking heavily at the time she went to Southwest General for treatment, and that she had experienced blackouts in the past.
 {¶ 10} The parties stipulated that in April 2002, defendant pled guilty to one count of domestic violence and was sentenced to seven months incarceration. It is undisputed that Beth was the victim of this assault.
 {¶ 11} The state also admitted the woman's medical records from July 27, 2002, which indicate that she reported to hospital personnel that her boyfriend slapped both cheeks approximately one week earlier, and that she complained of pain on the left side of her cheek which was getting worse. A CAT scan conducted at this time revealed a fracture of the nasal bone.
 {¶ 12} The defendant presented the testimony of his employer, Donald Downs, Jr. Downs testified that defendant began working for him in his flooring installation business in 2001. Defendant was subsequently incarcerated for seven months but returned to work after this time. In July 2002, defendant began to live at Downs's home. Downs did not allow defendant to drink alcohol. In addition, Beth was not welcome to visit defendant there because, Downs stated, she had caused a disturbance in the parking lot of his place of business. Downs also testified that Beth had called his cell phone to reach the defendant and threatened that if defendant did not call her back, she would be "reporting him for something." (Tr. 117).
 {¶ 13} Defendant was subsequently convicted of all three charges. The trial court determined that a prison term was consistent with the purposes of R.C. 2929.11 and sentenced him to concurrent terms of twelve months incarceration for the domestic violence conviction, three years for the felonious assault conviction, and one year for the retaliation conviction. Defendant now appeals and assigns two errors for our review.
 {¶ 14} Defendant's first assignment of error states:
 {¶ 15} "The trial court erred in denying defendant-appellant's motion for acquittal for felonious assault and the conviction for domestic violence based upon insufficient evidence."
 {¶ 16} "Sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955),162 Ohio St. 486, 124 N.E.2d 148. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. "A judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent, credible evidence which goes to all the essential elements of the case." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492. If there is substantial evidence in support of a verdict, an appellate court may not substitute its judgment for that of the jury as to weight and sufficiency. Id.
 {¶ 17} The essential elements of felonious assault are set forth in R.C. 2903.11 as follows:
 {¶ 18} "(A) No person shall knowingly: (1) Cause serious physical harm to another * * *[.]"
 {¶ 19} "Serious physical harm" is defined in R.C. 2901.01(A)(5), and includes:
 {¶ 20} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 21} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 22} "* * *
 {¶ 23} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 24} Where injuries to the victim are serious enough to cause him or her to seek medical treatment, the finder of fact may reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5). State v. Wilson (Sept. 21, 2000), Cuyahoga App. No. 77115,(citations omitted). Where the assault causes a bone fracture, the element of serious physical harm is met. State v.Thomas (Feb. 19, 1999), Summit App. No. 18881; State v. Childers (June 11, 1997), Jackson App. No. 96 CA 785; State v. Manning (May 26, 1995), Adams App. No. 94 CA 582.
 {¶ 25} In this case, the state presented evidence that the defendant struck the complainant in the head, straddled her and pressed his hands over her nose. The woman sought medical treatment for worsening symptoms which she attributed to the incident and she was then diagnosed with a fracture of her nasal bone. The state further demonstrated that in a letter written after the charges were filed, defendant proposed that the woman lie about how she obtained her injuries. Such evidence, if believed, would convince the average mind of the defendant's guilt of felonious assault beyond a reasonable doubt and that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, there is legally sufficient evidence to support defendant's conviction for this offense.
 {¶ 26} The elements of domestic violence are set forth in R.C.2919.25 which states:
 {¶ 27} "(A) No person shall knowingly cause or attempt to cause physical harm to a family member or household member.
 {¶ 28} "(D) * * * If the offender previously has pleaded guilty to or been convicted of domestic violence, * * * a violation of division (A) or (B) of this section is a felony of the fifth degree* * * *."
 {¶ 29} The evidence presented as to this offense established that defendant and Beth stayed in the same motel room on weekends. The state further demonstrated that after a day of drinking, defendant became angry, blamed her for his previous incarceration, then struck her and forcefully covered her nose and mouth so that she could not breathe, and repeatedly asked her if she wanted to die. The woman stated that she felt as if she was about to pass out, and she was later diagnosed with a fractured nasal bone. Finally, the state demonstrated that defendant had previously been convicted of domestic violence. This evidence, if believed, would convince the average mind of the defendant's guilt of domestic violence beyond a reasonable doubt, and a rational trier of fact could have found the essential elements of this offense proven beyond a reasonable doubt. Accordingly, we conclude that there is legally sufficient evidence to support defendant's conviction for domestic violence.
 {¶ 30} Defendant's second assignment of error states:
 {¶ 31} "The trial court's finding of guilty for domestic violence and felonious assault is against the manifest weight of the evidence."
 {¶ 32} A manifest-weight-of-the-evidence argument involves determining whether there exists a greater amount of credible evidence to support one side of an issue rather than the other. State v. Thompkins,
supra. It is not a question of mathematics, but depends on its effect in inducing belief. Id. The Thompkins court stated:
 {¶ 33} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'"
 {¶ 34} In determining whether a verdict is against the manifest weight of the evidence the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins, supra, citing Tibbs v.Florida (1982), 457 U.S. 31, 38, 42, 72 L.Ed.2d 652, 102 S.Ct. 2211. Accord State v. Otten (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009;State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 Ohio B. 215,485 N.E.2d 717. An appellate court must use discretion and only reverse convictions in extraordinary cases where the evidence clearly weighs in favor of reversal. State v. Thompkins, supra. Moreover, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 35} In this matter, Beth testified that defendant assaulted her in their hotel room, threatened to kill her, and compressed her mouth and nose. Medical records demonstrated that her nasal bone was fractured. In addition, the state presented letters written by defendant to the woman in which he "suggest[s] the perjury route" and outlines a scenario in which her injuries are attributed to a car accident. Although it is clear that the woman has an alcohol dependency problem and that she and the defendant had an extremely troubled relationship, we are unable to conclude that the evidence clearly weighs in favor of reversal or that the finder of fact lost its way in convicting defendant of the charges. Rather, the state presented credible evidence which effectively induced belief in the truth of the woman's testimony. Accordingly, we conclude that the convictions for domestic violence and felonious assault are not against the manifest weight of the evidence.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.